IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES RANDALL ECKERT,

               Petitioner,

    v.

MARK NOOTH, Superintendent Snake
River Correctional Institution

               Respondent.

Case No. 2:13-cv-01451-MA

OPINION AND ORDER

RUBEN L. INIGUEZ
Assistant Federal Public Defender
Federal Public Defender's Office
101 S.W. Main Street, Suite 1700
Portland, OR 97204

      Attorney for Petitioner

KRISTEN E. BOYD
Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

      Attorney for Respondent

1 - OPINION AND ORDER

MARSH, Judge

Petitioner James Randall Eckert, an inmate at the Snake River Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. Petitioner contends that the trial court violated his Due Process rights in admitting evidence of his association with white supremacy groups and a portion of a phone call recorded while petitioner was in jail. Petitioner also argues that trial counsel rendered ineffective assistance by failing to call an eyewitness to testify. Petitioner acknowledges that his ineffective assistance of trial counsel claim concerning the eyewitness' testimony is procedurally defaulted, but contends that post-conviction counsel's ineffective assistance establishes cause to excuse his default. For the reasons set forth below, the petition is denied.

## BACKGROUND

Following a four-day trial, petitioner was convicted of murder by a unanimous jury and sentenced to life in prison with a 300-month mandatory minimum. Petitioner directly appealed his conviction. The Oregon Court of Appeals summarized the uncontested facts in a published opinion:

> Defendant admitted at trial that he shot and killed the victim [Dennis Steffen] and that the incident followed an altercation that resulted from defendant's suspicion that the victim had raped defendant's girlfriend, [Leslie] Murray. The contested issue was whether the shooting was in self-defense.
>
> Defendant met Murray in the spring of 2003, and she moved into his apartment in December of that year. After a few months, however, she moved out, because she was unable to tolerate his methamphetamine use. Two friends, Daniel [Steffen], the victim's brother, and his girlfriend, Strong, offered her a place to stay at their home, and she accepted. Also living at that home was the victim.
>
> Because Murray was hoping to reconcile and resume her relationship with defendant, she became particularly upset when, sometime in March 2004, defendant visited the victim's brother at his and the victim's house accompanied by another woman. While Murray was upstairs "sobbing [her] eyes out," the victim comforted

her and gave her whiskey and beer. That night, the victim and Murray drove to a motel, where Murray "passed right out." When she awoke, the victim was having intercourse with her.

The following afternoon, Murray stopped by defendant's apartment to pick up some belongings. Defendant, aware that she had spent the night with the victim, asked her if the victim had raped her. She responded that he had; that made defendant "very angry." In the weeks that followed, defendant went "back and forth" between believing that the victim raped Murray and that the sex was consensual. He made various statements regarding the victim, including that he "had people that would take care of [the victim] in [prison]"; that the victim "really needed to pay" for what he had done; that he "wanted to kick the shit out of [the victim]"; that the victim was "a fucking dead man"; that "[a]nybody that was around [the victim] . . . [was] going to be hurt"; and that he "wanted to kill [the victim]." Defendant also threatened the victim, challenging him to a fight on various occasions, and told the victim, during one phone call, "If I catch you lying . . . I'll kill you."

Murray moved back into defendant's apartment in May. Defendant's friend, Lawe, and defendant's brother, Young, were also living there. Around that time, defendant told Murray that the victim's brother, had "found someone who can take care of [the victim]. All we have to do is come up with a gun." Murray asked an ex-boyfriend to lend her the firearm that defendant had requested, but he declined. That same month, defendant purchased a pair of .380 caliber semiautomatic handguns.

On the morning of the day of the shooting, defendant and a friend went to the victim's house. Defendant "called [the victim] outside," threatened to "kick [the victim's] ass," and told the victim that he had 48 hours to leave the state, "or else." That afternoon, defendant, Murray, and a friend went to a sporting goods store to purchase camping gear and ammunition. Defendant asked the sales clerk for ammunition that would "blow things up." The clerk suggested Federal Hydrashock bullets, designed for "personal defense" and to inflict maximum damage on the human body. Murray wrote a check for a few boxes of that type of ammunition, gun holsters, a gun case, candy, and soda.

When the group returned to defendant's apartment, defendant bragged about the confrontation with the victim earlier that day and "check[ed] out" his guns. Young returned home shortly thereafter, at which point defendant again recounted the day's altercation. Murray went into a bedroom and attempted to sleep, but she was interrupted when defendant entered the room and told her that he was going to find the victim because "he just couldn't get the images out of his mind . . . and that the voices in his head wouldn't stop until [the victim] was dead."

3 - OPINION AND ORDER

Defendant enlisted Young to accompany him. Before leaving, Young wrapped defendant's guns in a towel and wedged them in the undercarriage of the car to conceal them, and defendant put the boxes of ammunition in the trunk. As he was leaving, defendant told Lawe that he was "going to go fuck up [the victim]." After the men left, Murray told her neighbor that defendant had gone to shoot and kill the victim.

Defendant and Young parked a short distance from the victim's house because defendant "didn't want [the victim] to see him coming." They arrived at approximately 10:30 p.m. and went upstairs with the victim's brother to the bedroom of the victim, who was not yet home. After around a half hour, the victim returned. High on methamphetamine, he "yelled and screamed," demanding to know what defendant was doing in his room. He pushed defendant and defendant pushed back. Defendant then pointed one of the guns at the victim and pulled the trigger; the gun made a "clicking sound," but did not fire. The victim pushed defendant again, causing the gun to fly up and hit defendant in the head, inflicting a wound that bled profusely. Defendant then shoved the victim across the room and shot him in the chest. Just before leaving, defendant approached the victim and asked if he "want[ed] some more."

Young retrieved the bullet's shell casing off of the floor, and he and defendant left with the guns. Defendant then called Murray and Lawe, telling them that he had shot the victim and needed to leave the area. Murray drove herself and Lawe to a gas station to meet an ex-boyfriend, whom she asked for money, stating that she was in trouble and needed to leave because she did not want to "spend a lot of time in prison." He gave her money for gas and food. Murray and Lawe then picked up defendant and Young and drove to a nearby campground to spend the night. In the morning, the group fled east to New York, where they first learned that the victim had died.

After approximately one month in New York, they took a bus to Miami. While there, during an argument with Murray, defendant asked her, "What more do you want from me? I killed [the victim] for you." He also told Murray that he wanted to have a lightning bolt tattooed on the side of his neck; according to Murray, he told her that such a tattoo would signify that he had intentionally killed a person. However, because he wanted to have the tattoo drawn by a particular person whom he had met in prison and who was still incarcerated, he bought for the interim a charm bracelet with a lightning bolt on it. Defendant and Murray were eventually apprehended while in Miami.

*State v. Eckert*, 185 P.3d 564, 565-67 (Or.Ct.App. 2008) (alterations in first two paragraphs added; other alterations in original). The Oregon Court of Appeals concluded that the trial court properly

admitted the recorded phone call, but erred in admitting evidence of petitioner's affinity with white supremacist organizations.  However, the court concluded that the error was harmless in light of the overwhelming evidence against petitioner.  *Id.* at 569.  The Oregon Supreme Court denied review. *State v. Eckert*, 190 P.3d 1237 (Or. 2008).

Petitioner sought post-conviction relief ("PCR"), raising several claims of ineffective assistance of trial counsel ("IATC").  After several hearings on petitioner's motions to have post-conviction counsel removed, petitioner proceeded to PCR trial *pro se*.  Resp't's Ex. 140, ECF No. 30. The PCR court rejected petitioner's claims.  Resp't's Ex. 141.  On appeal, the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review.  Resp't's Exs. 144-46.

On August 19, 2013, petitioner filed his current federal habeas petition alleging eight grounds for relief.  Respondent moves to deny habeas relief, contending that: (1) Grounds One and Two are procedurally defaulted; (2) Grounds Three, Four, Five, Seven and Eight are not cognizable in habeas corpus; (3) Ground Six is procedurally defaulted and petitioner has not established cause to excuse his default.  Respondent is correct.

## DISCUSSION

I.    **Grounds One and Two Are Procedurally Defaulted**

A.    **Procedural Default Standards**

Generally, a state prisoner must exhaust all available state law remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). Exhaustion requires the petitioner to fairly present his federal claims to the appropriate state courts at all appellate stages afforded under state law. *O'Sullivan v. Boerckel*,

526 U.S. 838, 845, 848 (1999). "In order to fairly present a claim, the petitioner must clearly state the federal basis and federal nature of the claim, along with relevant facts." *Cooper v. Neven*, 641 F.3d 322, 327–28 (9th Cir. 2011); *see Davis v. Silva*, 511 F.3d 1005, 1008 (9th Cir. 2008). If the petitioner's federal claim is not exhausted, and he can no longer do so because of a state procedural bar, his claim is procedurally defaulted. *Cooper*, 641 F.3d at 327. Habeas review of procedurally defaulted claims is precluded absent a showing of cause and prejudice, or that failure to consider the federal claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A petitioner must make the federal basis of his claim explicit by referring to specific constitutional provisions, federal statutes, or citing federal cases. *Lyons v. Crawford*, 232 F.3d 666, 668, 670 (9th Cir. 2000), *as modified by* 247 F.3d 904 (9th Cir. 2001). Although a petitioner must refer to federal law in state court explicitly, "exhaustion is satisfied once the petitioner makes that explicit reference even if the petitioner relies predominantly on state law before the state courts." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**B.    Analysis**

Respondent contends that Grounds One and Two have not been exhausted because they were presented to the Oregon Court of Appeals and the Oregon Supreme Court on state grounds only. According to respondent, petitioner did not fairly present Grounds One and Two as federal claims and because he may no longer do so, they are procedurally defaulted.

In his briefing on direct appeal to the Oregon Court of Appeals, petitioner alleged two assignments of error:

(1) Whether the trial court erred in allowing evidence of [petitioner's] association with white supremacy groups.

(2) Whether the court erred in allowing into evidence a tape of a phone call [petitioner] made from the jail when the state had not timely provided a copy of the tape to [petitioner's] attorney.

Resp't's Ex. 103, p. 1, ECF No. 30. Petitioner also included the following in his Conclusion section of his appellate brief:

[Petitioner] would argue that the errors affected his federal constitutional rights. Among other things, he was denied a fair trial, as guaranteed by the Fifth and Fourteenth Amendments. *See McKinney v. Rees*, 993 F.2d 1378 (9th Cir. 1993); *Lisenba v. California*, 314 U.S. 219 (1941).

*Id.* at 29.

I agree with petitioner that his characterization of Grounds One and Two as federal, coupled with citations to the Fifth and Fourteenth Amendments and federal case law analyzing federal due process standards was sufficient to apprise the Oregon Court of Appeals that he was asserting federal claims. *See Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2004)("[C]itation to either a federal or state case involving the legal standard for a federal constitutional violation is sufficient to establish exhaustion.").

However, as respondent correctly indicates, petitioner failed to alert the Oregon Supreme Court to any federal issue. Petitioner's petition for review is devoid of any citation to a federal statute, constitutional provision, or federal case law. In response, petitioner maintains that "[t]he Oregon Supreme Court considered [petitioner's] petition with full access to the briefs previously filed by both parties in the Court of Appeals," and contends that this was sufficient to apprise the Oregon Supreme Court under *Farmer v. Baldwin*, 205 P.3d 871 (Or. 2009). I disagree.

7 - OPINION AND ORDER

In *Farmer,* the Oregon Supreme Court clarified that it "may consider briefs filed in the Court of Appeals to identify and evaluate a party's legal arguments on a question presented on review." *Farmer*, 205 P.3d at 874. However, *Farmer* involved a prisoner who attached a copy of his PCR petition as "Section B" of a *Balfour*[1] brief filed in the Oregon Court of Appeals, and then cross-referenced that same brief in his petition for review to the Oregon Supreme Court. *Farmer*, 205 P.3d at 877.

*Farmer* is readily distinguishable from petitioner's situation. Unlike *Farmer*, petitioner here was represented by counsel, and his counseled brief failed to identify any federal issue in his petition for review. Resp't's Ex. 107, ECF No. 30. Moreover, petitioner's petition for review failed to incorporate by reference any arguments made below and cited case law discussing exclusively state evidentiary and state constitutional issues. The petition for review did not contain a *Balfour* brief or any *pro se* briefing but rather attached only the lower Oregon Court of Appeals decision which rested exclusively on state law. *See Peterson v. Lampert*, 319 F.3d 1153, 1159 (9th Cir. 2003)(*en banc*)(finding that a counseled petitioner who raised federal issues before the court of appeals, but omitted federal issues in petition for review to Oregon Supreme Court failed to fairly present those federal issues); *Castillo*, 399 F.3d at 1001 (finding that citation to irrelevant federal or state law cases does not provide a state court with a fair opportunity to resolve controlling federal legal principles). "[W]hile the Oregon Supreme Court Justices may choose to review the briefs filed in the lower courts, this choice does not satisfy the federal exhaustion requirement which places the burden on petitioner to raise his federal claims at each and every level of his state court review." *Williams v.*

---

[1]In *State v. Balfour*, 814 P.2d 1069 (Or. 1991)(*en banc*), the Oregon Supreme Court set forth standards with which appellate counsel must comply if he or she determines that no meritorious issues exist on appeal. *Farmer v. Baldwin*, 497 F.3d 1050, 1052 (9th Cir. 2007).

*Nooth,* No. 3:10-cv-00070-ST, 2013 WL 1703596, *4 (D. Or. Mar. 21, 2013), *adopted* 2013 WL

1703616 (D. Or. Apr. 15, 2013), *aff'd,* 606 F. App'x 380 (9th Cir. 2015)(finding counseled petition

for review on direct appeal failed to incorporate any issues by reference); *Reese v. Baldwin,* 541 U.S.

27, 32 (2004)(finding petitioner does not satisfy federal exhaustion requirements if a state court must

read beyond a petition or brief to discover the federal nature of his claim). Thus, petitioner's petition

for review, without any citation to federal law or any reference to the federal arguments contained

in his briefing below, failed to fairly present Grounds One and Two. *See Frazier v. Hill,* Civ. No.

05-1416-ST, 2011 WL 740912, *4 (D. Or. Feb. 22, 2011)(finding that counseled appellate brief and

*pro se* supplemental brief attaching PCR petition as excerpt of record failed to fairly present federal

claim); *accord Williams v. Belleque,* Civ. No. 03–1678–JO, 2010 WL 3603781, *5 (D. Or. Sept. 13,

2010)("*Farmer* was specifically limited to the situation where appellate counsel filed a *Balfour* brief

and, as the prisoner's 'Section B' portion of the brief, the prisoner attached a copy of the PCR

petition.").

       Therefore, because petitioner failed to fairly present Grounds One and Two[2] to the Oregon

Supreme Court and the time for doing so has lapsed, they are procedurally defaulted. Petitioner has

not demonstrated either cause and prejudice for the procedural default, or that failure to consider the

claims on the merits will result in a miscarriage of justice. Accordingly, habeas relief is unwarranted

on Grounds One and Two.

////

////

---

      [2]In light of my determination that Ground Two is procedurally defaulted, I decline to
address respondent's contention that Ground Two fails to comply with habeas corpus pleading
requirements.

9 - OPINION AND ORDER

## II.     Grounds Three, Four, Five, Seven and Eight Are Not Cognizable in Habeas

In Grounds Three through Five, petitioner alleges the post-conviction court abused its discretion in denying petitioner leave to file an amended petition, substitute counsel, and a continuance of his PCR trail date.  In Grounds Seven and Eight, petitioner alleges PCR counsel's failure to raise certain claims in his PCR petition constitutes ineffective assistance.  As respondent correctly indicates, these claims are not cognizable in habeas corpus.  *See Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) ("a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings"); *Coleman*, 501 U.S. at 725 ("Because there is no constitutional right to an attorney in state postconviction proceedings, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") (internal citations omitted). Petitioner concedes that Grounds Three, Four, Five, Seven and Eight are not cognizable in habeas corpus.  Accordingly, habeas relief on these claims is denied.

## III.    Petitioner's Procedural Default of Ground Six is Not Excused

Petitioner argues that trial counsel rendered ineffective assistance by failing to call Daniel Steffen, the victim's brother, as a witness at trial.  Petitioner concedes this claim is procedurally defaulted because it was not fairly presented to the state courts through the post-conviction process. Petitioner maintains, however, that his procedural default should be excused because he can establish cause under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).

### A.     *Martinez* Standards

A petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993).  Consequently, the general rule is that any errors

committed by PCR counsel cannot serve as a basis for cause to excuse a procedural default. *Coleman*, 501 U.S. at 752-53. However, the Supreme Court established a limited exception to the general rule in *Martinez*: "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S.Ct. at 1315. To establish "cause" to overcome procedural default under *Martinez*, a habeas petitioner must show:

> (1) the underlying ineffective assistance of trial counsel claim is "substantial"; (2) the petitioner was not represented or had ineffective counsel during the PCR proceeding; (3) the state PCR proceeding was the initial review proceeding; and (4) state law required (or forced as a practical matter) the petitioner to bring the claim in the initial review collateral proceeding.

*Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014)(citing *Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013)); *see also Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014).

In this case, there is no question that petitioner satisfies prongs three and four because Oregon's post-conviction procedure is the initial review proceeding, and Oregon law requires that IATC claims be raised on post-conviction. Or.Rev.Stat. § 138.550 (3)(all grounds for relief must be asserted in original or amended PCR petition); *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012)(noting Oregon requires IATC claims be raised in a collateral proceeding); *State v. Robinson*, 550 P.2d 758, 758 (Or.Ct.App. 1976)(holding IATC claims may only be resolved in a post-conviction proceeding). My analysis therefore centers on prongs one and two.

Under the first *Martinez* prong, a petitioner must come forward with facts to demonstrate that his underlying IATC claim is "substantial," or has "some merit." *Martinez*, 132 S.Ct. at 1318; *Clabourne*, 745 F.3d at 375-78. Generally, to establish that an IATC claim is "substantial" requires a petitioner to show that trial counsel rendered deficient performance and that he suffered prejudice

11 - OPINION AND ORDER

as a result of counsel's errors. *Strickland v. Washington*, 466 U.S. 668 (1984). To prove deficiency of performance, petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688; *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000)(quoting *Strickland*, 466 U.S. at 687-88). To establish prejudice petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id.* at 696.

Because the "substantiality" analysis under *Martinez* is not a merits review, but more akin to whether a certificate of appealability should issue, a habeas petitioner has satisfied the first prong of *Martinez* if he has shown the merits of the *Strickland* claim would be "debatable amongst jurists of reason" or the issues are deserving of further pursuit. *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013)(*en banc*), *cert. denied*, 134 S.Ct. 2662 (2014)(quoting *Miller-El v. Cockrell*, 537 U.S. 322(2003)). Stated inversely, a claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." *Martinez*, 132 S.Ct. at. 1319; *Detrich*, 740 F.3d at 1245.

Under the second *Martinez* prong, petitioner must show that he either had no counsel on the initial post-conviction review, or that PCR counsel was "ineffective under the standards of *Strickland*." *Martinez*, 132 S.Ct. at 1318; *Clabourne*, 745 F.3d at 377. Thus, petitioner must show that PCR counsel's performance in the initial-review collateral proceeding fell below constitutional standards in order to establish "cause." *Martinez*, 132 S.Ct. at 1319. Not every error by PCR counsel will constitute "cause"; indeed, PCR counsel "is not necessarily ineffective for failing to raise even a nonfrivolous claim." *Sexton*, 679 F.3d at 1157. To show prejudice, petitioner must show that if PCR counsel had not performed deficiently, the result of the PCR proceeding would

12 - OPINION AND ORDER

have been different. *Clabourne*, 745 F.3d at 376-77. This determination "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.* at 377–78. The court may address either inquiry first, as resolution of one prong may obviate the need to address the other. *Martinez*, 132 S.Ct. at 1319.

### B.    *Martinez* Analysis

Petitioner asserts that trial counsel, Ray Bassel, rendered constitutionally deficient performance by failing to call Daniel Steffen, the brother of the murder victim, to testify as a witness at trial. According to petitioner, counsel's failure to call Steffen to testify enabled the prosecutor to argue that the murder was premeditated, instead of in self-defense. Petitioner argues that during an interview prior to trial, Steffen admitted to a defense investigator that he telephoned petitioner and Young and invited them to his residence, assuring them that the victim was not home (testimony that corroborated petitioner's and Young's trial testimony). Pet'r's Br. in Supp., 13, ECF No. 39; Pet'r's Ex. 4, ECF No. 40. Petitioner contends that his self-defense theory would have been stronger with Steffen's testimony. Respondent argues that trial counsel's decision not to call Daniel Steffen was strategic and well within the bounds of constitutional adequacy. Respondent is correct.

During the PCR process, Bassel sent an email to PCR counsel Michael Mahony concerning the decision to not to call Steffen to testify. Bassel responded:

> In regards to Daniel Steffen, it appears that at the last minute a decision was made to not call him as a witness. We had interviewed him previously and he was scheduled to testify. During the course of the trial I learned that Daniel Steffen was going to change his story on [two] important points. The first was that he called his Brother the victim and told him to come home. He did this while both [petitioner and Young] were present. The second point was that he now was going to say that [the victim] was afraid of [petitioner] and he would not have attacked [petitioner] out of that fear. Both pretty significant points considering our theory of the case. I am sure I discussed this with [petitioner] before the final decision was made.

Pet'r's Ex. 4, ECF No. 40.

Petitioner suggests that Bassel failed to verify that Steffen indeed was planning to change his story, and therefore should have called Steffen to testify. Pet'r's Sur-Reply at 8, ECF No. 49. Additionally, petitioner maintains that even if Steffen was planning to "change his story," Bassel rendered deficient performance in failing to call Steffen to testify because Steffen's contrary testimony readily could have been impeached with testimony from Jody Skau and the defense investigator. Petitioner's arguments – that calling Steffen would have yielded helpful testimony or that Steffen could have been effectively impeached – are meritless.

To begin, petitioner's contention that he was prejudiced by Bassel's alleged error is "wholly without factual support." *Martinez*, 132 S.Ct. at 1319. Petitioner must show a reasonable probability that but for counsel's failure to call Steffen as a witness, the jury's verdict would have been different. *Strickland*, 466 U.S. at 694; *Hurles v. Ryan*, 752 F.3d 768, 782 (9th Cir. 2014). Petitioner suggests that Steffen's testimony would be helpful because he was an eyewitness. However, petitioner has not submitted an affidavit from Steffen detailing Steffen's purported testimony.[3] Because there is nothing in the record regarding Steffen's potential testimony except petitioner's self-serving statements, petitioner's argument is purely speculative. *Hurles*, 752 F.3d at 782 (finding petitioner did not establish that trial counsel's error in failing to track down a witness prejudiced defense, and *Martinez* did not excuse procedural default of claim); *see also Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000)(denying ineffective assistance of counsel claim based on

---

[3]Indeed, petitioner contends that an affidavit from Steffen is not "essential to his ineffective assistance claim." Pet'r's Sur-Reply 8, ECF No. 49. Petitioner admits that the current evidentiary record is sufficient, and notably does *not* seek an evidentiary hearing to clarify what Steffen's testimony would have been if called as a witness. *Id.*

failure to call witnesses when no affidavits were submitted to support petitioner's assertion as to what helpful testimony would have been provided); *Ermitano v. Tampkins*, No. EDCV 12-00714-JFW (MAN), 2014 WL 537519, *12 (C.D. Cal. Feb. 10, 2014)(finding petitioner did not establish trial counsel's failure to call witness prejudiced defense where petitioner did not submit affidavit from potential witness).

Next, assuming *arguendo* that Steffen would have testified favorably – that Steffen assured petitioner and Young that the victim was not home on the night of the shooting – the evidence in the record concerning Steffen's alleged "assurances" was weak.  To be sure, petitioner and Young testified inconsistently about what specific assurances Steffen provided.  Young initially testified that he was concerned about going over to Steffen's house with petitioner because the victim might show up and there might be a confrontation.  Tr.  726-27.  Young later testified that he agreed to go to Steffen's house with petitioner after petitioner informed him that the victim was not home because the victim was leaving to go to California.  Tr. 746-47.

However, petitioner provided a different version of Steffen's assurances.  Petitioner testified that when Steffen telephoned and invited him over, Steffen assured petitioner that the victim was in Forest Grove at the victim's girlfriend's home for the night.  Tr. 934.  When asked about the discrepancy on cross-examination, petitioner denied knowing that the victim was moving to California.  Tr. 934-35.  Bassel could not know whether Steffen would corroborate petitioner's or Young's testimony, but instead believed that Steffen would testify that petitioner knew the victim would be home.  Thus, in light of the disparate testimony between petitioner and Young and the uncertainty of what Steffen might say, Bassel's strategic decision not call Steffen to testify clearly was not objectively unreasonable.  *See Strickland,* 466 U.S. at 690 (holding that trial counsel's

15 - OPINION AND ORDER

informed strategic choices "are virtually unchallengeable."); *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir.), *amended on denial of reh'g*, 253 F.3d 1150 (9th Cir. 2001)(failing to interview witness does not establish IATC where the potential witness' versions of events are fairly known to counsel).

Moreover, assuming *arguendo* that Steffen would have testified unfavorably – that petitioner knew the victim would be home and that the victim was afraid of petitioner – petitioner's contention that Steffen could have been impeached effectively with his prior inconsistent statements is unconvincing. Petitioner contends that Bassel could have called the defense investigator and Jody Skau to testify about prior inconsistent statements made by Steffen to them. According to petitioner, Skau would have testified that two weeks after the shooting, Steffen told her that on the night of the shooting, Steffen assured petitioner and Young that the victim "was gone and not expected back." Pet'r's Ex. 5, ECF No. 40. Petitioner's arguments miss the mark.

Even if Skau would have testified exactly as her affidavit provides, it would not convincingly bolster petitioner's self-defense theory. Skau's testimony does not corroborate either petitioner's testimony that the victim was in Forest Grove, or Young's testimony that the victim was moving to California. Additionally, Skau's credibility was questionable at best. Skau testified at trial and admitted that she was a methamphetamine user and dealer (who sold to the victim), and admitted to numerous prior convictions for crimes of dishonesty, including forgery, theft and identity theft. Tr. 1034-37. Thus, petitioner has not established that Bassel's decision not to present potentially damaging testimony from Steffen in order to pursue weak testimony from an impeachable witness fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 690 (noting strategic decisions such as which witnesses to present, if based upon a reasonable investigation, "are virtually unchallengeable").

16 - OPINION AND ORDER

Furthermore, having carefully reviewed the entire record, it is clear that Steffen's purported testimony would not have aided petitioner's self-defense claim enough to overcome the jury's unanimous verdict of premeditated murder. At trial, the primary contested issue was whether petitioner shot the victim in self-defense or whether the killing was premeditated. The state presented overwhelming evidence of premeditation. To be sure, petitioner admitted that he threatened to kill petitioner after he learned of Murray's contention that the victim raped her, and petitioner admitted to threatening to "kick [the victim's] ass" just hours before the shooting. Tr. 887, 893. Petitioner and Young admitted that they parked several blocks away from the house on the night of the shooting, and Young testified that he picked up the spent bullet shell casing before leaving the victim's residence. Tr. 754. Petitioner, Murray, Young and Lawe all immediately fled the area after the shooting and petitioner acknowledged doing so to evade detection. Tr. 941. Additionally, the state presented testimony from Murray's neighbor who stated that on the night of the shooting, Murray was fearful that petitioner was going to shoot the victim. Tr. 290.

Finally, the state's most damaging evidence of premeditation came from petitioner himself. During the defense's presentation of evidence, petitioner insisted that the guns were *not* loaded when they arrived at Steffen's residence. Tr. 897. On rebuttal, the trial court permitted the prosecution to present a seven second portion of a jailhouse phone call in which petitioner admitted to knowingly bringing loaded guns to the victim's residence.[4] Tr. 1094-95. Therefore, petitioner has

---

[4]Petitioner's credibility was impugned further in rebuttal when the prosecution called petitioner's former supervisor, who testified that petitioner had not been rehired, was not scheduled to work the day following the shooting, and under no circumstances could have been rehired. Tr. 1089. The supervisor's testimony directly contradicted petitioner's testimony that he was looking forward to returning to work at his former workplace the day following the shooting. Tr. 928.

17 - OPINION AND ORDER

not established that there is "some merit" to his assertion that he was prejudiced by trial counsel's failure to present Steffen's testimony; accordingly, petitioner has failed to establish that his IATC claim is substantial under *Martinez.*

Petitioner likewise fails to establish the second *Martinez* prong because he has not established that PCR counsel's performance was deficient. Petitioner complains that Mahony failed to communicate or and consult with him prior to eliminating most of his IATC claims from his PCR petition.[4] Specifically, petitioner argues that PCR counsel failed to properly investigate his IATC claim contained in Ground Six prior to eliminating it from PCR petition. The post-conviction record shows that petitioner filed numerous motions requesting new PCR counsel. Resp't's Ex. 115, 116, 129. The PCR court held several hearings, and ultimately permitted Mahony to withdraw. Resp't's Ex. 140. The facts simply belie petitioner's assertions.

First, petitioner cannot establish that PCR counsel failed to properly investigate prior to eliminating Ground Six from the PCR petition. The record demonstrates that Mahony hired two investigators to track down Steffen, to no avail. Resp't's Ex. 140, Tr. PCR Hr'g at 45, ECF No. 30. Additionally, Mahony also spoke with a relative of Steffen who informed Mahony that Steffen was unwilling to provide any information. *Id.* at 34, 52-54. Again, petitioner has offered nothing beyond speculation and self-serving statements that Steffen could have been found and that PCR counsel was ineffective in failing to uncover that purported testimony. *Hurles,* 752 F.3d at 782 (finding

---

[4]Of note, Mahony eliminated petitioner's claims that trial counsel rendered ineffective assistance by failing to present a plea offer of 17.5 years and failed to present a defense of extreme emotional disturbance ("EED"). Resp't's Ex. 110 at 5. Mahony obtained an expert who reviewed petitioner's case and determined there was no basis for asserting an EED defense. *Id.* at 51-54. Moreover, the state confirmed that no plea deal was ever offered. Resp't's Exs. 120-21.

*Martinez* did not excuse procedural default of IATC claim for failing to call witness where PCR counsel hired investigator but was unable locate witness and petitioner presented no affidavit from purported witness); *Dows*, 211 F.3d at 486 (rejecting IATC claim for failing to interview or call alibi witness where the petitioner failed to provide any evidence such as an affidavit that the uncalled witness would have provided helpful testimony).  Petitioner has not established the PCR counsel rendered deficient performance in withdrawing the claim concerning calling Steffen to testify. *See Smith v. Murray*, 477 U.S. 527, 536 (noting that "winnowing out weaker arguments" on appeal is a hallmark of effective appellate advocacy).

Second, petitioner has failed to establish that his underlying IATC claim had "some merit," therefore, PCR counsel did not render constitutionally deficient performance in failing to include Ground Six in his PCR petition. *Clabourne*, 745 F.3d at 377 ("[I]f the claim of ineffective assistance of trial counsel is implausible, then there could not be a reasonable probability that the result of the post-conviction proceedings would have been different").  Additionally, "[i]f trial counsel was not ineffective, then [petitioner] would not be able to show that PCR counsel's failure to raise claims of ineffective assistance of trial counsel was such a serious error that PCR counsel 'was not functioning as the "counsel" guaranteed' by the Sixth Amendment." *Sexton*,  679 F.3d at 1159 (quoting *Strickland*, 466 U.S. at 687).

In short, *Martinez* does not excuse petitioner's procedural default of Ground Six because he has not demonstrated that his IATC claim is substantial and that PCR counsel was ineffective under *Strickland. Martinez*, 132 S.Ct. at 1318; *Clabourne*, 745 F.3d at 376.

19 - OPINION AND ORDER

Petitioner submits that a *Martinez* evidentiary hearing is necessary to "present expert testimony on the standard of care necessary" in a post-conviction proceeding. Pet'r's Brief in Supp. 26, ECF No. 39. Petitioner indicates that he would call Mr. Mahony to testify about the reasons he eliminated petitioner's "meritorious ineffective assistance claims from the Formal Petition for post-conviction relief." *Id.* Tellingly, petitioner does not seek an evidentiary hearing to resolve Daniel Steffen's purported testimony. The record before me concerning post-conviction counsel is well-developed, it is clear that PCR counsel was not ineffective, and the requested hearing is not necessary to resolve whether petitioner's underlying claim of IATC is substantial. Accordingly, petitioner's request for a *Martinez* evidentiary hearing is denied.

## CONCLUSION

Based on the foregoing, petitioner's habeas corpus petition (ECF No. 3) is DENIED. Petitioner's request for a *Martinez* evidentiary hearing is DENIED. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is denied. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this _10_ day of NOVEMBER, 2015.

Malcolm F. Marsh
United States District Judge

20 - OPINION AND ORDER